The first case on the call this morning is Agenda No. 3, Case No. 123-937, Ward v. Decatur Memorial Hospital. Counsel, you may proceed. May it please the Court, I am Mike T. Hart from Decatur, and I represent the Defendant Appelant, Decatur Memorial Hospital. This case was originally filed in Macon County, Illinois, Decatur. It arises out of medical treatment at Decatur Memorial Hospital for home health nurses. In December of 2009, the suit was filed. The underlying surgery was stomach stapling surgery that was performed in December of 2007 on Clarence Ward, who was a gentleman in his late 40s, and who was an inpatient for four days thereafter, discharged home for ten days, cared for by his family, seen by home health nurses, and suddenly and unexpectedly developed a condition known as acute necrotizing fasciitis, sometimes referred to in the popular literature as fasciating bacteria. This was sudden and unexpected. He went to the hospital, was operated on, and unfortunately died. He was survived by his adult brothers and sisters, no wife, no children. The suit was originally filed December of 2009. Over the next six years, there were 19 counts filed, and of those, 17 were dismissed ultimately on motion by the defendant. The original complaint had nine counts, of which eight were dismissed. There was a first amended complaint in August of 2010, and a second amended complaint, which I think is the critical one for us in this case. The second amended complaint was filed in November of 2010. It consisted of a respondeat survival action against DMH, a respondeat superior wrongful death claim, an institutional negligence, and an institutional negligence survival and wrongful death claim. The plaintiff went forward, ultimately on the eve of trial in January of 2016, took a non-suit, and at that point, the case was dismissed voluntarily. Three months later, May of 2016, he refiled the action. We filed a motion to dismiss based on the authority of Hudson, arguing that the race judicata and claim splitting prevented the filing of the second lawsuit, and therefore, the court did take that under advisement and did rule for us and found that race judicata barred the second filing. The particular issue presented in this case is the meaning of Hudson, and I'm not sure if the pronunciation is rain or rine. They seem to go together. The Fourth District Appellate Court has ruled, as the court knows, that the trial court was incorrect in finding that race judicata applied. The court found that there was some language in the appellate court's opinion which appeared to us to be correct, and it kind of recited the language of this court in Foxcroft, which is that if you file a complaint and you are dismissed and you don't protect yourself by repeating or in some fashion referring to those things that were dismissed, that you are barred and you therefore have split your claims that race judicata applies. We believe that the Fourth District Appellate Court was incorrect in its ultimate holding, which was that they believed that none of what happened before the circuit court over those six years and those 17 counts that were dismissed, none of those things happened. They're a nullity in effect. They ruled that it was totally irrelevant what happened in those earlier motions. It was irrelevant whether the court found they were with prejudice or without. It was irrelevant whether Lee was granted or was not, and the court found therefore that the claim was improperly dismissed and allowed the plaintiff to go forward. It's another way to look at this that those earlier counts, all those 19 counts, were not final. That seems to be the issue. I want to give you an opportunity to respond to the case of Richter v. Davenprimes. That seems to be the most recent case from this court. You did not refer to it in your opening brief, even if it was raised in the brief you didn't have an opportunity to respond to the court's most recent statements where the court said, Ryan, and as a person who has an EI on her name I pronounce it Ryan, Ryan and Hudson are clearly distinguishable from the incident case. Here the circuit court never entered an order dismissing the action in Richter 1 or any other order that could be deemed final. A final order cannot fire a subsequent action because Richter 1 was dismissed with no final adjudication on the merits of any of the claims and without a final adjudication on the merits, the claim splitting issues addressed in Ryan and Hudson are not presented here and res judicata is not applicable. Why doesn't Richter control this case? Well, the trial court certainly knew about Richter and it was argued strongly by my opponent in the case. I believe the difference between these cases is that the facts are different but also in Richter the plaintiff did not plead over, which he did here. In Richter I believe the plaintiff was given something like 28 or 30 days within which to file an amended complaint. He didn't. Some years went by and he didn't and nothing happened in the case essentially so ultimately then the plaintiff took a non-suit. The difference is in that case nothing happened in the case. Nobody pushed it. It was dismissed and nothing ever happened to enter a final judgment. Well, that's the question. Richter seems to say the key is all of what went before were any of those final judgments. Can you tell me which of the 19 counts that were before the court, which one in a final judgment that Richter requires for res judicata? Well, in Richter there were no motions like we have in this case. In other words, the case sat there for a long time and ultimately the plaintiff... There was a three count complaint. One was dismissed. Two were dismissed and one was not. Then there was a leave to plead over and then it was voluntary dismissal. The court said there was no final order. Where was there a final order in this case? This is kind of a convoluted pleading case, Judge, but I think the critical part is the second amended complaint wherein institutional negligence was filed by the plaintiff. The reason for the dismissal is that the plaintiff did not have a certificate under 2622 to support it and, of course, that's a threshold requirement. Additionally, the plaintiff also alleged not only a nursing negligence but alleged physician negligence. There was nothing saying anything on the certificate about physician negligence. And in both of those counts, they were given leave to re-plead? Yes. Are those final orders? Well, at that point, it depends on what the plaintiff does. If the plaintiff doesn't file those things within 30 days, then yes, it's final because the threshold doesn't exist anymore. Is that what Richter said? No, that's what we're arguing in this case. So how do you relate... Okay, well, with respect to Richter, this case might be closer to Richter if instead of the course it actually took, back very early on in this case, the court said to the plaintiff, okay, you have 28 days within which to file something, and he didn't. And the case goes on for three or four years and nobody does anything, and he takes a non-suit. Then it would be Richter. Exactly it would be. The difference is that in this case, the plaintiff pled over, and that was a final judgment because they abandoned it, basically, in this case. So I think... That's an adjudication on the merits. I'm sorry? That's a final adjudication on the merits. We say yes, that it was. And what is your support for that? Well, 2622, I would say. And it is an institutional negligence. It's a totally separate claim from responding at superior for actions of a nurse or a doctor. And it was a claim they filed, and there was a motion to dismiss, and it was allowed. They did not go on and they repled and did not protect themselves by referencing it in a footnote or in a separate paragraph or repleting it or appealing it. And that's the crux of it, I think. Are you arguing that the dismissal of the institutional negligence bars the responding at superior count? Is that what you're arguing? Yes, by reason of the application of Hudson, which is all matters. It's true there was never a ruling on the responding at superior claim. It's the same way it was in Hudson in that case. Basically, they never did get to the merits of the Wilflin-Wanton claim. But the fact that when the non-suit was taken, the plaintiff hadn't protected himself with regard to the negligence claim, it's the same way here. We never got to the merits of the responding at superior claim, but the fact of the matter is when they dismiss institutional negligence and it was a final order by reason of the plaintiff's conduct, then that operates the same way that Hudson did. Counsel, a large part of your argument relies on the fact that you assert that this is no different than Ryan and Hudson, right? That there's no what, Judge? That there is no difference here between Ryan and Hudson? Ryan and Hudson in this case? I think Ryan and Hudson is what we're relying on. It's true in Ryan and Hudson I think that there was not an order entered that allowed the filing of an amended complaint. I think that's true, that there wasn't. Nevertheless, I don't think So it's not as clear that some counts here have been finally dismissed? Well, we think it is, but I understand the question, which is that, you know, we do, we've included cases in our brief that indicate that a dismissal for failure to have a 262 certificate or improper is a final judgment on the merits under Rule 273. So we think it is final. Would it be final if the plaintiff had protected themselves, if they had gone forward and had a certificate and had amended their complaint? No, it wouldn't be. But by reason of the way the case unfolded, yes, it is. That's our position. Please help me understand. The dismissal was with leave to file a new complaint within 28 days. That's the second amended complaint. Right. And then they did file another. Then it went forward to be set for trial, correct? They filed another complaint and it was set for trial. And abandoned the institutional negligence. And so when they abandon it, even though, when they plead over, that means that the earlier count being dismissed is final. That's correct. All right. That's our position. And I think that's the holding of Hudson and I think that's the holding of Ryan. And I think Foxcroft bears on that too. Just one last time. How does Richter play into this? Richter is saying specifically, it's different. In Ryan Hudson, there was no leave to file another complaint. There is certainly here over and over and over again. Sure sounds like this case is more like Richter than Ryan and Hudson. Well, we don't think so, Judge. And the difference is that they did plead over and they abandoned the previous claim. That's what they did. So if we had sat there, as I mentioned to you earlier, if we'd sat there for years and the plaintiff did nothing further and we didn't either, this would be Richter. That would be this case. But they abandoned it. They plead over. I might say, moving on to a separate issue, I think the 4th District Court was incorrect in their interpretation of Foxcroft. I believe that they misinterpreted Foxcroft. I can't account for why they interpreted it the way they did. Their interpretation is that nothing that happened in those 6 years with these various counts matters. It doesn't matter what was done in terms of with prejudice, without, that it's totally without significance in the case. So the result is that the court wasted a lot of time. The lawyers wasted a lot of time arguing these things. And we get to the end and we think the upshot of the court's opinion in the 4th District is that they can refile anything they want a second time through. And I don't think the rule permits that. There are a couple of other points I would like to make and that is I wonder if the court in the 4th District misconstrued Foxcroft in this way. It's true Foxcroft says that if you're before the court on a pleading issue, that the previous pleadings in the case that have taken place aren't before the court. The court can't consider those things. I wonder if the court believed in this case that somehow those previous pleadings and those dismissals over these six years were what was being considered. But actually I think the court simply misconstrued Foxcroft. I believe they felt that the holding of Foxcroft is that because of the fact that those things aren't considered, that somehow they can't be considered by the court, that they're not part of the history of the case and they are. The critical part of our case here is that all of these things happened. The plaintiff abandoned the claim and therefore that was a judgment on the merits and therefore res judicata is appropriate. There are a couple of other points I do want to make. The plaintiff here in this case, I should point out, the plaintiff in the case in his brief talks about his belief that the court was incompetent to preside over a medical negligence case. He attached an exhibit. The court previously ruled, I believe, in Hudson that the motive of the plaintiff for taking a non-suit is not relevant. The court shouldn't consider it. The other thing that I think the plaintiff relies on is that in the dismissal in January of 2016, at that point the court used the words without prejudice and somehow that means that he is free to file anything he wants. This court also rejected that argument in Hudson. So our argument is that there was a final judgment by reason of that second amended complaint that the plaintiff abandoned the claims that therefore summary judgment was appropriately entered for the defendant in the case. I think that's all I have. If the court doesn't have questions. Seeing none, thank you. Thank you. Mr. Walter. Good morning. May it please the court, my name is Randy Walter. My firm represents the I think I'd like to talk about Richter first. I've always thought their main argument was when the institutional negligence count was dismissed that that somehow was a final judgment that prevented us from refiling this case. But if you look at Richter, it's right on point because that count was dismissed with leave to refile and that's what Richter says. If you have leave to refile or if it's dismissed without prejudice, either one, it's not a final judgment. So we don't believe that that is the basis for claiming it was a final judgment. The other thing I mentioned right off the bat is the number of counts. Can I ask a record question? Sure. The counts you're talking about, this is a second amended complaint, this is counts three and four that were dismissed with leave to refile, that's the institutional claim. Those were struck because there was not a 622 affidavit? My reading of it was struck because at that point there wasn't any evidence that the reason for the nurse's failure to meet the standard of care was related to a staffing issue or some other hospital problem. So it was struck because there wasn't enough evidence? No. And frankly, we didn't, I don't believe even, you need a 622 for that argument. Do you know what the record says? What was your motion? It wasn't our motion. I'm sorry, what was their motion to dismiss? Their motion was to dismiss that count just because there wasn't a basis for it. But it was clear that if discovery would have shown that the reason these nurses failed to turn this gentleman and he had a bed sore that was open when he went home, that was the porthole for this bacteria that ended his life, was because of staffing issues, because there weren't enough nurses, then I think there would have been some more responsibility. But the key issue is it's not a final judgment. They also seem to be making the argument that any one of those counts that we have that were dismissed are enough to be a final judgment. But you need to look at those. If you look at the initial complaint, there's nine counts, but the factual allegations are the same in each one. Nurses violated the standard of care. It resulted in the death of Mr. Ward. And most of those were dismissed because they sued unknown defendants, you sued unknown people, you sued non-entity, some name that doesn't exist, your plaintiff hadn't been appointed yet. Those are the reasons why those counts were all dismissed, correct? Correct. Which raises another issue. All of those without prejudice? Well, they all said without prejudice leave to amend except the unknown employees. But again, I don't think it has anything to do with the merits. The other cases we cite, DeLuna and Dinnerstein, the dismissal has to involve the merits of the case. In other words, the defendant has to respond to allegations that we have to prove to prove negligence. They're saying that when the defense counsel came to me and said, you know, Decatur Home Health Care is owned by the hospital, so you don't really need to sue them all. We just said fine and we took them out of the case. Well, those are three counts that disappeared, a wrongful death case, a survival case, and a Family Expense Act case, all were removed. Wasn't involuntary, we said okay, that's fine. The question of the administrator, when the family came to us, there wasn't a lot of time left, and we couldn't find one of the brothers. He was a strange member of the family, so we had to do it by publication. So when we filed, he was not yet named administrator, but it relates back. But again, we had the right to refile that, which we did, after he was named the administrator for his brother. Is institutional negligence separate and apart from medical negligence? We don't, you know, our argument is in terms of the allegations, and we cite this court's decision in Wilson, which was another case later than everything else they cite here, it says, you know, those are overlapping allegations. If you take those away, you still have the nursing negligence. It doesn't really affect the critical nature of the case. So, but the key thing is, you know, Richter says, and again, Richter's later than any case they cite, it's a unanimous decision of this court, says, if it's dismissed without prejudice, it's not a final judgment. That's how it was dismissed. If you have leave to refile, it's not a final judgment. It was dismissed with leave to refile. So it fits into Richter exactly, and we don't think that's the only reason. I mean, the two things I looked at when we had this issue with Judge Diamond, and they mentioned in their brief, by the way, that we didn't raise it at the appellate court, but we did. It's section five of our appellate court brief, that when watching him in hearings, and then when he, a few days before trial, said we couldn't call our rebuttal witness, and couldn't call one of our key nurses who had written a document that was very important, and couldn't amend the complaint to make it match what we found in discovery, I called my client and told him what the options were, and I was sure then, and I'm sure now, that if we filed without prejudice, which it was, that we had a year to refile any claim that we had brought before. We couldn't bring new claims, but anything that had been raised before, we could raise in the subsequent case in Ward 2. Isn't that preciously close to judge shopping? You don't like the judge you got, so you dismiss it? I know that's an interesting part of this case, but my client, when I told him about this, and told him the options, this is what he decided to do. We could have got him back again, but we didn't want to try the case with our hands tied behind our back. Ordinarily, if you don't approve of the court's rulings, and you make your record, you take it up on appeal if you get an adverse decision, isn't that correct? We had other options, none of them seemed to be very good, but this one seemed to make the most sense. After a voluntary dismissal, what's the effect of earlier rulings on the second case? So in other words, you didn't like the ruling the judge made, so you figured you'll dismiss and get another judge. Maybe the judge will make a different ruling, that seems to be what you're saying, right? Well, we were convinced the judge would make a different ruling, and Judge Little did. The first thing he said was, with all due respect, those were crazy rulings. You didn't like the judgment, so you want to go find another judge, and what is the law about that? Would the second judge have to be bounded in any way by the earlier rulings of the judge in the first case? Here's my understanding of that. It's a new case. I mean, it's not the old case, it's a new case. But if there are any rulings that the second judge thinks were reasonable from the first case, whether it's discovery or dismissing for statute of limitations or whatever it might be, they can abide by those rulings. It's a new case, but you have that history, and the second judge can look at that history. But that's a great question, because it's no prejudice to the defendant. I mean, except for this, may I ask another question? All the motion practices we've been talking about was, the case was filed in 2009-2010, and 2011 are all these motion practices. And then the case does nothing until it's set for trial in 2016. And right before trial, it asks to file another complaint, which would be the fifth complaint, the fourth complaint. And the trial judge said something like, at this late date, I can't find the words exactly, but he said, at this late date, this case has been pending for all these years. Then it becomes a question about the entire court system and how long the case had taken. Do you know the ABA standards say that a time standard for civil jury cases say that all jury cases should be completed in two years? What happened in this case? Well, I take a lot of the responsibility, because I should have asked the judge to help with discovery. But I'll just give you an example, and I can read you things. Dr. Gilman was the surgeon. We scheduled his deposition, and about an hour in, he said, I have to leave. Well, I wrote a letter right after that saying, well, we want to finish the deposition. It was over a year before he was presented again. I have letters where counsel for the hospital said, we understand the urgency of this, and we'll schedule these nurses' depositions, and they never did. I should have gone into the court and pushed to get a faster schedule. I hope the timing on this doesn't affect the legal side of it, and a lot of time has been spent on a ton of issues on this case, on everything you can imagine. We've been in front of the judge a lot of times in this case. But that's, I mean, I take responsibility for not pushing it faster and getting the judge, if he would have, to help us move it along. Mr. Walters? Yeah. Well, it claims in an amicus brief that the real problem here is this court's rule that was established in a number of cases that all final orders entered in a case become immediately appealable when there's a voluntary dismissal. I would suspect you agree with that position. I do, and here's... And before you answer, let me just ask my question. Does this case, you're aptly here, but does this case serve as an opportunity for this court, if we agree, to change that rule that's been established? And if so, what does the landscape look like going forward? Okay. That's a great question. Here's my response. It's been about 48 years since Dean Krivett addressed my incoming class at the U of I, and he said, we're going to teach you how to see the big picture. And to me, what you've asked is part of the big picture. It would be so much easier if everybody understood that that statute gives you a year to refile. There's no question about it, if you want to call it an exception to res judicata. But a circuit court like Decatur shouldn't have the opportunity to just ignore that statute because I've dropped counts against Decatur Home Health Care for one reason or another, or finally have the right administrator in the case. If both sides knew that during that year, a case could be refiled and would be limited to anything that had been filed before, and as the appellate court pointed out, even if it's dismissed with prejudice, you've got to refile it or you waive it. So anything that you've raised before, you can raise during that year. And that brief makes a good point that there's absolutely no prejudice to the defendant. They haven't seen, they're not seeing anything they didn't see in the prior case. What's particularly interesting in this case is our position is there's only been one cause of action. It's a claim that nurses failing to meet the standard of care resulted in the death of Mr. Ward. It's very straightforward. We never alleged anything against the physician. There was no need to do that. There was some confusion because I'm not sure the circuit court realized that in order to pursue a claim against nurses, you have to get a 622 from a doctor, and then you have to have a nurse talk about the standard of care. So there's no prejudice to the defendant. I was interested in that. Were you done with that? Well, I lost my train of thought. I mean, as long as, what I was going to say in this case is that cause of action that we think is the only cause of action was the subject of a motion for summary judgment, and it was denied. And that's still the only cause of action they're seeing in Ward 2. So how can they claim that they were in any way prejudiced by this? And that would, so, yeah, I mean, we think that Hudson was decided incorrectly. I mean, the defendant was not facing anything they hadn't seen before. There was no new allegations. There was no claim splitting. I mean, there's no claim splitting in this case. I mean, dismissing home health care, naming who the administrator is, you know, getting rid of defendants. Hudson would have had to do the exact thing I'm asking that may, asking could be done in this case, right? Because Hudson was following other precedent. That's why I'm just asking you, if we agree with you, is this an opportunity to take the position that it has taken here? Yeah. And I think if you follow the appellate court's decision on Foxcroft and Bonhomme, you know, that not only can you refile what was pending, but anything that had been dismissed, even with prejudice, if you look at the amicus brief and you agree that. . . Does it amount to an overruling of Bryan? Which Hudson followed? You know, we think Judge Kilbride's dissent in Hudson makes a lot of sense. And we. . . Full receipt. Yeah, and we. . . Full receipt. You know, and we talk about the restatement of judgments that's been accepted by this court that says you can refile. He cited a United States Supreme Court. We grabbed that one, too, in the SESTIC international case that says the same thing. So all these things are in line with having a year to file a new claim that can raise any allegation you've raised before, whether it was dismissed with or without prejudice. That would be great. Everybody would know exactly what's going on, and the nightmare of Hudson for plaintiff's lawyers would be over and people wouldn't be trying to find a way to use it or get around it. But, yeah, we think so. The author of Hudson likes to call it the nightmare of Ryan rather than the nightmare of Hudson. Well, you know, Judge Kilbride distortions Ryan from Hudson, says he would have decided Ryan the way it was, but it's not a basis for Hudson. There are two sets of facts. Because of Ryan, they let it go and they appealed a couple of counts and then came back later, and that constitutes claim splitting. We don't have any of that in our case. They didn't have any of that in the Hudson case. So I think, you know, in talking to people about Hudson, you know, maybe I described it incorrectly because I'm sure I'm using adjectives that defense counsel wouldn't use, but they're mouth drops. You've got to be kidding me. They re-filed the negligence case and it got dismissed, and I said, yeah, that's what happened. But it's separate from this case because in that case it was dismissed without prejudice. And the other distinction is there was no way to bring it back. I mean, the immunity is clear. There was no way to bring that part of the case back. We don't have any of that here. We don't have anything dismissed without prejudice. We don't have any counts that couldn't have come back had we found out that we were correct in the first place or found out through discovery we had a claim like that. So, but, yeah, you know, it would be great if some of this could be clarified because, you know, all the litigation has come, you know, subsequent to this. And so it would be a good time to do that. I do want to, the thing that I dwelled on when I started responding to these motions is that we always thought we only had one cause of action, nursing negligence. No claim splitting. No counts that were dismissed on the merits. That was subject to summary judgment. We prevailed on that. And, you know, also that, as we've already discussed, since their key issue was the negligence, institutional negligence, that Richter was a controlling factor. And I will say also at the circuit court level, the first time they filed a motion dismissed based on res judicata, the court decided in our favor and then changed its mind when they went back a second time on a motion for rehearing. So this is actually, I think, the fourth time we've actually argued this particular issue. So we think we had a year to refile without exception. And the LaSalle case, the Colley case, Foxcroft are all in line with that. The institutional negligence, first of all, we don't think is a separate count. It's still dealing with nursing negligence. Regardless, then you have Richter that says if it's dismissed without prejudice or if it's dismissed with legal appeal, it's not a final judgment. We've got the issue that there's no claim splitting because this was one cause of action, that's all it's ever been, never filed suit against the doctor. And we have this issue of it being inequitable to apply, in this case, regardless of everything else, because of why this came about. I mean, I don't know what your response is to those rulings eight days before trial, but, I mean, we couldn't believe it. And Judge Little said the same thing as soon as he took over the second case, I don't understand the reason for not letting Nurse Gavin testify or I don't understand why the rebuttal witness can't testify. I mean, we're supposed to amend a complaint to make it consistent with what's been discovered during discovery, I mean, all the way through trial. I mean, we're supposed to do that. I wasn't asking a favor. And it wasn't really changing. It was still based on nursing negligence. He was supposed to be turned every couple hours. He wasn't. He went home with a bed sore that was 14 centimeters by 16 centimeters that was open. It's in the records. He was unlucky in getting a bacteria that was deadly, but that's the porthole. We have an infectious disease expert that's already on record of testifying to that. And that's the gist of the complaint, and that's always been the gist of the complaint. That's why we recited all the claims in our brief, because they're the same from case to case. The parties change, but the counts are always the same. Cause of action. I also raised just briefly that issue of, you know, is it really an involuntary dismissal when the defendant tells me that home health care is owned by the hospital, we say fine, and we dismiss home health care because there's no need to have both those defendants in there. And I don't think it's a stretch to say that was involuntary. Were those the counts three and four that were dismissed by agreement? Well, I mean, why would I fight that? I mean, yeah. I was just trying to understand this record. Right. I'm trying to go through each one of the counts, find out what happened. I just want to kind of pin you in. What are you talking about? And if I recall, that came up after. . . You can't tell me which complaint or which count. You can't tell me. I think we dismissed home health care on the second amended complaint, but it was simply because we were told that they're not a separate entity. They're wholly owned by the hospital. The hospital is already a defendant. So that's why of the 17 counts that were dismissed, their best argument is the institutional negligence because you could argue that's a separate cause of action than the nursing negligence. We don't think it is, and we cite Wilson in a recent case from this court. But even if it is, it got dismissed without prejudice and it got dismissed with leave to appeal, and Richter couldn't be more clear on that. It's not a final judgment. And the final thing is what Judge Thomas recommended. We think that cases we cite, cases cited in the amicus brief, the Foxcroft and Bonhomme case that are cited by the appellate court, are all consistent with saying you've got one year to file a case and you can not only reallege anything you've already alleged, but you have to, otherwise you're waiving. So that's our position. Thank you. Thank you. Mr. Keyhart, rebuttal. Several points briefly, Judge. Institutional negligence is absolutely a separate claim from respondeat superior nursing doctor negligence. It has different elements. When they sued in institutional negligence, the reason it was dismissed is because they had no certificate and they didn't get one. So it's a certificate issue. It's not a 2615 issue. No, it isn't. It's a 26192622. Because they don't have a certificate. Right. So are you saying that because they didn't have the certificate, that was an adjudication on the merits?  It is. Yes, it is. If you don't have a certificate, it's on the merits. Even though they were granted leave to refile? Well, even though they had an opportunity to file one, but they didn't. Counsel seemed to suggest they didn't have a claim for that, and he's right. They didn't. They tried to plead it, and it just wasn't there, and they didn't get a certificate, because I'm sure they couldn't find one. So it is a totally different theory. I think that Ryan and Hudson and Foxcroft were all well decided. I think those are the law. I think this court can do anything at once as far as those previous cases. I hope the court follows Ryan and Hudson and Foxcroft. I hope the court does not let that decision of the 4th District stand, because to me it's illogical. It's not supported by the Foxcroft case. I think it misses the holding altogether. Can I go back to one other line in Richter, talking about when counts are dismissed with prejudice? Yes. And the question in Richter was that the case is drifted after that. And the Supreme Court said, of course, it was within the discretion of the circuit court in Richter I in the first whole case to entertain a defense motion for a final order dismissing the cause of action prior to a ruling on plaintiff's motion for voluntary dismissal. So, in other words, you could have moved in the trial court for an order making all of these orders final, and you did not do that. Judge, I have never seen that done. I've never done that because the effect of dismissing for 2622 is a dismissal with prejudice. It doesn't need another motion. Even though it says without prejudice. Well, that, no, it didn't say without prejudice. What it says is leave granted to file an amended complaint and certificate. That's what it says. And they didn't. So, there is no necessity. Once the court dismisses that count and they plead over, it's gone. It can't be resurrected in the case. The other thing is there's a suggestion. Look, the issue was not home health care. Home health care is a DBA name, doing business as. It absolutely is not an entity. It is a part of the hospital. That is not the issue. The issue is count two of the second amended complaint, where they allege other things like institutional negligence and physician negligence, and they never gave a certificate for physician negligence. This case did not go on for six years because the plaintiff had a hard time getting a deposition of a doctor. It didn't. It went on for a very long time because there were numerous counts filed that were improper, and it went on for a long time because, frankly, I think inattention is what I think. I would hope the court would reverse it. Whatever it does with this case, I would hope it reverses the Fourth District appellate decision, because I do think it's illogical. The counsel did mention DeLuna. DeLuna is the case that basically says that 2622 is a threshold requirement, that absent that, the claim cannot go forward, and it is a final judgment. Thank you. Thank you. Case number 123937, Ward v. Decatur Memorial Hospital, will be taken under advisement as agenda number three. Mr. Keyhart, Mr. Walter, we thank you for your arguments this morning.